**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-25**

| | |
|---|---|
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.; CENTER FOR FOOD SAFETY; ANIMAL LEGAL DEFENSE FUND; FARM SANCTUARY; FOOD & WATER WATCH; GOVERNMENT ACCOUNTABILITY PROJECT; FARM FORWARD; and AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,** | |
| **Plaintiffs,** | **DEFENDANTS' MEMORANDUM OF LAW TO SUPPORT MOTION TO DISMISS** |
| **v.** | |
| **ROY COOPER, in his official capacity as Attorney General of North Carolina, and CAROL FOLT, in her official capacity as Chancellor of the University of North Carolina-Chapel Hill,** | |
| **Defendants.** | |

NOW COME Defendants, Roy Cooper in his official capacity as Attorney General of North Carolina, and Carol Folt, in her official capacity as Chancellor of the University of North Carolina at Chapel Hill (UNC-Chapel Hill) (hereafter "Defendants" or "Defendant Cooper" or "Defendant Folt") and submit this Memorandum in Support of their Motion to Dismiss.

## STATEMENT OF THE CASE

Plaintiffs originally filed this action on January 13, 2016, and filed an Amended Complaint (hereafter "Am. Compl.") on February 25, 2016, adding two additional Plaintiffs. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging violations arising under the Free Speech Clause of the First Amendment (Count I) (Am. Compl. ¶¶ 114-121) and the Equal Protection and Due Process Clauses of the Fourteenth Amendment (Count II) (Am. Compl. ¶¶ 122-126) of the United States Constitution. Plaintiffs also lodge State constitutional law claims arising under the N.C. Constitution, Article I, §§ 12, 14 and 19 (Counts III, IV, and Counts V, respectively) (Am. Compl. ¶¶ 127-141). None of Plaintiffs' claims is supported by the facts pled, or by federal or state law. Accordingly, Defendants move to dismiss this action based on Eleventh Amendment immunity, Plaintiffs' lack of standing, and Plaintiffs' failure to state a claim for relief.

## STATEMENT OF THE FACTS

Plaintiffs are eight organizations claiming that N.C.G.S. § 99A-2, titled "Recovery of damages for exceeding the scope of authorized access to property," unconstitutionally

stifles their activities.[1] The North Carolina General Assembly enacted this statute during its 2015 Legislative Session (N.C. Sess. Law 2015-50, s. 2), with an effective date of January 1, 2016. The statute provides an employer with a new civil cause of action for damages against a person who "intentionally gains access to the nonpublic areas" of the employer's premises and "engages in an act that exceeds the person's authority" in this nonpublic area. N.C.G.S. § 99A-2.

The cause of action may arise when a person interferes with an employer's privacy interests by entering a nonpublic area without a *bona fide* intent of seeking or holding employment, or of doing business with the employer, and without authorization removes data, paper, records, or other documentation, or records, sounds and images, and uses this information to breach a duty of loyalty owed to the employer. N.C.G.S. §§ 99A-2(b)(1) and (2).

The cause of action also may arise when a person interferes with an employer's property or privacy rights by knowingly and intentionally placing a camera or surveillance device in a nonpublic area of the premises and recording images or data, N.C.G.S. § 99A-2(b)(3); conspiring in an organized retail theft, N.C.G.S. § 99A-2(b)(4); or substantially interfering with the ownership or possession of real property. N.C.G.S. § 99A-2(b)(5). Joint liability is provided when one person "intentionally directs, assists, compensates, or induces" another person to exceed his authority in the nonpublic area. N.C.G.S. § 99A-2(c).

---

[1] In their Complaint, Plaintiffs characterize and refer to the statute as the "Anti-Sunshine Law." This characterization is a legal conclusion; it is not the statute's title.

In Paragraphs 15-52 of the Amended Complaint, Plaintiffs set forth allegations pertaining to their respective organizations and the activities in which they engage. Plaintiffs People for the Ethical Treatment of Animals ("PETA"), Animal Legal Defense Fund ("ALDF"), and Farm Sanctuary each allege that they employ individuals to seek jobs and work undercover in the nonpublic areas of the facilities that they investigate for suspected animal cruelty or mistreatment. (Am. Compl. ¶¶ 15-20 (PETA); ¶¶ 27-29 (ALDF); ¶ 36 (Farm Sanctuary)) ALDF's undercover methods include making recordings or placing recording devices in nonpublic areas of facilities. (Am. Compl. ¶ 29) After gathering information undercover, these Plaintiffs release it to federal, state, or local authorities and the public, (Am. Compl. ¶¶ 18-21(PETA); ¶¶ 29, 31 (ALDF); ¶¶ 35-36 (Farm Sanctuary) ("education efforts and media outreach")), or publicize it in news articles, blog posts, videos, press releases, reports, or newsletters. (Am. Compl. ¶¶ 18-21 (PETA); ¶ 27 (ALDF))

ALDF has a list of farms, research facilities, puppy mills, and animal hoarders, allegedly including governmental facilities, that it would like to investigate undercover and for which it has collected, in some instances, employment applications. (Am. Compl. ¶ 30) Farm Sanctuary would like to continue relying on undercover investigations in its advocacy. (Am. Compl. ¶ 36) PETA alleges that more than a decade ago, its employees infiltrated the nonpublic areas of UNC-Chapel Hill animal laboratories and uncovered alleged animal mistreatment. (Am. Compl. ¶ 21) Though it allegedly believes that animal mistreatment persists at UNC-Chapel Hill, it does not allege any engagement with

3

UNC-Chapel Hill since 2003. (Am. Compl. ¶¶ 21-22) Now, after the statute's enactment, PETA alleges that it would like to conduct another undercover investigation there. (Am. Compl. ¶ 22)

Each of these Plaintiffs allegedly fears liability under the statute for its undercover investigations, and alleges that the statute creates a "chill" with respect to its desired form of speech and advocacy. (Am. Compl. ¶ 22 (PETA); ¶ 32 (ALDF); ¶ 36 (Farm Sanctuary)) ALDF also fears statutory liability if it relies on undercover information gathered by others and provided to it. (Am. Compl. ¶¶ 31-32) Farm Sanctuary alleges that N.C.G.S. § 99A-2 has a "chilling" effect on its reliance on information provided by other whistleblowers. (Am. Compl. ¶ 36)

Plaintiffs Center for Food Safety ("CFS"), Food and Water Watch ("FWW"), Farm Forward ("FF"), and American Society for the Prevention of Cruelty to Animals ("ASPCA") allege that they rely on whistleblowers and undercover investigations for their respective missions, which generally relate to animal and food industries. (Am. Compl. ¶ 25 (CFS); ¶ 39 (FWW) (also relying on federal poultry inspectors); ¶ 44 (FF); ¶¶ 49, 51 (ASPCA)) Plaintiff Government Accountability Project ("GAP") allegedly protects whistleblowers and advances "occupational free speech" by defending whistleblowers employed in academia, agriculture, and pharmaceutical industries, and by offering them legal assistance. (Am. Compl. ¶¶ 40-41)

These Plaintiffs disseminate information to the public through various forms of media or publications. (Am. Compl. ¶¶ 23-24 (CFS); ¶ 38 (FWW); ¶ 42 (GAP); ¶ 44

(FF); ¶ 50 (ASPCA)) Plaintiffs allege harm based on the "chilling effect" of being denied access to whistleblower information (Am. Compl. ¶ 26 (CFS)), or being unable to rely on or distribute/publish whistleblower information to carry out their organizational missions. (Am. Compl. ¶¶ 38-39 (FWW); ¶ 42 (GAP); ¶ 45 (FF); ¶ 51 (ASPCA)) Each fears liability under N.C.G.S. § 99A-2 if it uses whistleblower information in carrying out its activities. (Am. Compl. ¶ 26 (CFS); ¶ 42 (GAP); ¶ 39 (FWW); ¶ 45 (FF); ¶ 51 (ASPCA)) None of these Plaintiffs alleges any connection between the statute and UNC-Chapel Hill, though GAP alleges that it assisted a former University employee in a matter unrelated to N.C.G.S. § 99A-2. (Am. Compl. ¶ 41)

Plaintiffs sue Defendant Cooper in his official capacity as the chief law enforcement officer of the State pursuant to N.C.G.S. § 114-1.1, and allege that he has the duty to appear in court on criminal or civil matters in which the State may be a party or is interested, and to represent State agencies pursuant to N.C.G.S. §§ 114-2(1) and 2(2). (Am. Compl. ¶ 53) Plaintiffs sue Defendant Folt in her official capacity as the Chancellor of UNC-Chapel Hill because she is the "administrative and executive head" of UNC-Chapel Hill and exercises "complete executive authority therein" pursuant to N.C.G.S. § 116-34(a). (Am. Compl. ¶ 54) Plaintiffs' allegations in the remaining paragraphs of their Amended Complaint concern the enactment of N.C.G.S. § 99A-2 and its provisions (Am. Compl. ¶¶ 55-77), as well as the alleged unconstitutionality of the statute. (Am. Compl. ¶¶ 78-141) Paragraphs 78-113 are legal arguments and include citations to case law and the statute.

Even though Plaintiffs fail to allege specific facts to support an as-applied constitutional challenge to N.C.G.S. § 99A-2, Plaintiffs seek a declaration that the statute is unconstitutional on its face and as-applied to them and seek to enjoin Defendants, as well as their officers, agents, employees, attorneys, and all other persons in active concert or participation with them from enforcing the statute. (Am. Compl. ¶¶ 142.a. and 142.b.) They ask that the statute be struck down and that Defendants provide public notice in the official and online editions of the North Carolina statutes that N.C.G.S. § 99A-2 is unconstitutional and will not be enforced. (Am. Compl. ¶ 142.c.) Plaintiffs also seek attorneys' fees and costs. (Am. Compl. ¶ 142.d.)

## QUESTIONS PRESENTED

I.     WHETHER THE ELEVENTH AMENDMENT BARS PLAINTIFFS' 42 U.S.C. § 1983 FEDERAL CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS COOPER AND FOLT?

II.    WHETHER DEFENDANTS COOPER AND FOLT ARE IMPROPER PARTIES UNDER 42 U.S.C § 1983?

III.   WHETHER THE ELEVENTH AMENDMENT BARS PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS?

IV.    WHETHER PLAINTIFFS LACK STANDING TO PURSUE THEIR 42 U.S.C. § 1983 CLAIMS AGAINST DEFENDANTS?

V.     WHETHER PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT N.C.G.S. § 99A-2 IS UNCONSTITUTIONAL?

VI.    WHETHER PLAINTIFFS CFS, FWW, GAP, FF, AND ASPCA FAIL TO STATE A CLAIM FOR RELIEF FOR "FEAR OF LIABILITY" UNDER N.C.G.S. § 99A-2?

VII.   WHETHER PLAINTIFFS ALDF, FARM SANCTUARY, AND PETA FAIL TO STATE A CLAIM FOR RELIEF?

## STANDARD OF REVIEW

The standard of review for a motion filed under Rule 12(b)(1) for lack of subject matter jurisdiction is set forth generally in *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The plaintiff bears the burden of showing that jurisdiction is appropriate. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A motion filed under Rule 12(b)(2) tests a court's jurisdiction over an individual. The burden is on the plaintiff to demonstrate that jurisdiction is proper. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Blanket, conclusory allegations" are insufficient to show jurisdiction. *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *accord Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Although all well-pled allegations are presumed to be true and must be viewed in the light most favorable to the plaintiff, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555); *see also Brown*, 716 F.3d at 350. Similarly, a court need not accept as true a plaintiff's legal conclusions and "unwarranted inferences, unreasonable

conclusions, or arguments," *Giarratano*, 521 F.3d at 302 (citation omitted) (internal quotation marks omitted).

## ARGUMENT

Plaintiffs' Amended Complaint should be dismissed because Eleventh Amendment Immunity bars the federal claims against Defendants, as well as the state constitutional law claims. Not only does Eleventh Amendment Immunity resolve this lawsuit, but Plaintiffs lack standing and fail to state claims for relief. Plaintiffs have misread N.C.G.S. § 99A-2 in a manner that forecloses their claims as a matter of law.

## I. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' 42 U.S.C. § 1983 FEDERAL CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS COOPER AND FOLT.

The Eleventh Amendment bars actions against a State by its citizens in federal court. *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* doctrine, however, permits suits against state officers for prospective relief where there is an ongoing violation of federal law, even when the court would not otherwise maintain jurisdiction under the Eleventh Amendment. *Id*. at 157. This exception to Eleventh Amendment immunity is directed at "officers of the State [who] are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." 209 U.S. at 155-56.

Application of the *Ex parte Young* exception requires a demonstration of a "special relationship" between the officers being sued in the present action, and the

8

challenged state law.  209 U.S. at 157; *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001), *cert. denied*, 535 U.S. 904 (2002).  The requirement of "proximity to and responsibility for the challenged state action" is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state."  *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 331, 333 (4th Cir. 2008)(citation omitted).  Without the requisite connection between a state official and the statute's enforcement, a plaintiff is merely suing the state officer "as a representative of the State" in an impermissible attempt to "make the State a party."  209 U.S. at 157.  The Eleventh Amendment shields States from lawsuits brought against state officials if the "state is the real, substantial party in interest."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  Further, a State is not a person within the meaning of § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989), and therefore is not itself a proper party under § 1983.

Plaintiffs fail to allege facts sufficient to abrogate Defendants' Eleventh Amendment immunity because there is no alleged nexus between Defendants Cooper or Folt and the civil enforcement of N.C.G.S. § 99A-2. The Eleventh Amendment bars actions against a state official where there is not an ongoing violation of federal law. *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

### A. Defendant Cooper's General Authority In His Role As Attorney General Is Not Sufficient to Make Him A Party to this Litigation.

N.C.G.S. § 99A-2 creates a civil cause of action for damages in favor of an employer who owns or operates a premises.  Plaintiffs allege that the Attorney General

9

has general enforcement powers under N.C.G.S. § 114-1.1, which codifies the common law powers of the State's attorney general. (*See* Am. Compl. ¶ 53) The State Attorney General's common law powers do not authorize Defendant Cooper to enforce a private right of action on behalf of a citizen, such as that of an employer under N.C.G.S. § 99A-2. *See Martin v. Thornburg*, 320 N.C. 533, 546, 359 472, 479 (1987) (attorney general has common law duty to prosecute actions to protect and defend the property and revenue of the sovereign State). N.C.G.S. § 99A-2 by its express terms does not otherwise authorize Defendant Cooper to bring a civil action directly in his name, whether on behalf of a private employer or on behalf of the State in the public interest. N.C.G.S. § 114-1.1 does not sufficiently connect Defendant Cooper to the enforcement of N.C.G.S. § 99A-2 as a matter of law. N.C.G.S. § 99A-2 also is not a criminal statute and even if it were, the attorney general may only prosecute criminal matters upon request of a district attorney. N.C.G.S. § 114-2(4) and § 114-11.6.

Plaintiffs also cite to Defendant Cooper's duties under N.C.G.S. § 114-2(1) and (2), alleging that these provisions authorize Defendant Cooper to defend the State in actions in which the State may be a party or interested, and to represent State entities. (Am. Compl. ¶ 53) This attorney-representational role does not sufficiently connect Defendant Cooper with the enforcement of N.C.G.S. § 99A-2. The Supreme Court in *Ex parte Young* specifically rejected the type of generalized assertions made by Plaintiffs, stating that otherwise "the constitutionality of every act passed by the legislature could be tested by a suit" against the attorney general, who might "represent the state in litigation

involving the enforcement of its statutes." 209 U.S. at 157. Thus, the possibility that a State agency may request the legal counsel or representation of the State Attorney General in a hypothetical matter that may arise under N.C.G.S. § 99A-2 is insufficient as a matter of law to connect Defendant Cooper to the enforcement of N.C.G.S. § 99A-2.

In light of the test articulated in *Ex parte Young*, Plaintiffs make no allegations to sufficiently connect Defendant Cooper with the duty to enforce N.C.G.S. § 99A-2. Accordingly, the *Ex parte Young* exception to the Eleventh Amendment does not apply, and Defendant Cooper must be dismissed as a defendant. *See McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (Eleventh Amendment barred suit against Attorney General under state's FOIA because he had no more than a general authority to enforce the law); *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341-42 (11th Cir. 1999) (Eleventh Amendment barred suit against Governor, Attorney General, and District Attorney with respect to private civil enforcement provision of partial-birth abortion statutes); *Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 440-41 (7th Cir. 1992) (attorney general not proper defendant in 42 U.S.C. § 1983 action when "[p]laintiffs ha[d] not articulated any theory under which *Ex parte Young* supports a suit against the Attorney General, who has never threatened the [plaintiffs] with prosecution and as far as we can tell has no authority to do so"), *cert. denied*, 508 U.S. 950 (1993).

### B. Defendant Folt's Role as Chancellor Does Not Give Rise to a Special Connection Allowing Her to Enforce the Challenged State Statute.

Similarly, Plaintiffs fail to allege that Defendant Folt has a sufficient connection with the enforcement of N.C.G.S. § 99A-2 to abrogate Eleventh Amendment immunity.

11

Plaintiffs do not (and cannot) allege that Defendant Folt may initiate a lawsuit pursuant to N.C.G.S. § 99A-2. Indeed, they do not (and cannot) allege any statutory provision that authorizes Defendant Folt to file a civil action. (Am. Compl. ¶ 54) Accordingly, Defendant Folt has no specific authority to enforce N.C.G.S. § 99A-2.

In their limited allegations regarding Chancellor Folt, Plaintiffs allege only that the Chancellor, as UNC-Chapel Hill's "administrative and executive head," has "complete executive authority" at the institution. (Am. Compl. ¶ 54) These selected portions of N.C.G.S. § 116-34(a) relate to the general authority of chancellors of the constituent institutions of University of North Carolina, but they do not connect Defendant Folt to the enforcement of N.C.G.S. § 99A-2. In *Board of Governors of University of North Carolina v. United States Dep't of Labor*, 917 F.2d 812, 816 (4th Cir. 1990), *cert. denied*, 500 U.S. 916 (1991), the Fourth Circuit analyzed the legislative scheme under which the University of North Carolina[2] and its constituent institutions are organized and recognized that "only the Board of Governors [of the University of North Carolina] is 'capable in law to sue and be sued.'" (*citing* N.C.G.S. § 116-3). While the chancellors are the "administrative and executive head[s]" of the respective constituent institutions, their authority is simply a delegation of the authority granted to the President of the University of North Carolina, who in turn has only the authority delegated to him or her by the Board of Governors. N.C.G.S. § 116-34(a). *See also* N.C.G.S. § 116-11(13) ("The Board may delegate any part of its authority . . . through the President to the

_____

[2] UNC-Chapel Hill is a constituent institution of the University of North Carolina. N.C.G.S. § 116-4.

chancellor of the institution . . ."). The chancellor's authority, moreover, is "subject to the direction of the President." N.C.G.S. § 116-34(a). "Regardless of any authority that the Board of Governors may have delegated to the constituent campuses of UNC, the Board retains ultimate control over the campuses' activity through its unlimited power to rescind any delegation." *Board of Governors of University of North Carolina*, 917 F.2d at 817.

The Board of Governors has not delegated to Chancellor Folt the authority to enforce N.C.G.S. § 99A-2. The *UNC Policy Manual* provides that "[a] constituent institution has no independent authority to initiate or settle lawsuits in its own name." *UNC Policy Manual*, Section 200.5. (Exhibit 1) Chancellor Folt may request the Board of Governors to approve litigation (UNC Policy Manual, Section 200.5(2)), but she does not have the power to file suit. Section 200.5 specifically states that:

> By virtue of N.C.G.S. § 116-3, the authority to initiate and settle lawsuits in the name of the University of North Carolina, and on behalf of the constituent institutions, lies with the Board of Governors.

*UNC Policy Manual*, Section 200.5 (Exhibit 1).

Chancellor Folt does not have independent authority to file lawsuits in her name or on behalf of the Board of Governors of the University of North Carolina. Nothing in N.C.G.S. § 99A-2 changes this reality. Accordingly, the *Ex parte Young* exception to the Eleventh Amendment does not apply, and Defendant Folt must be dismissed as a defendant.

## II.     DEFENDANTS COOPER AND FOLT ARE IMPROPER PARTIES UNDER 42 U.S.C. § 1983.

Plaintiffs have further failed to demonstrate that these public officials have engaged in an ongoing violation of the U.S. Constitution, and therefore qualify as "persons" under 42 U.S.C. § 1983. Under § 1983, claimants must establish that a person acted in such a way as to deprive them of rights, privileges, or immunities secured by the Constitution and laws. *See Cockerham v. Stokes County Bd. of Educ.*, 302 F. Supp. 2d 490, 498 (M.D.N.C. 2004) (holding that "[t]o state a claim under § 1983, a plaintiff must allege the deprivation of a right secured by the Constitution or federal law, and that the violation was committed by a person acting under color of state law.") (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiffs allege no acts by either Defendant Cooper or Defendant Folt. Other than conclusory allegations about the general authority of Defendant Cooper and Defendant Folt as State officers, Plaintiffs' Amended Complaint is completely devoid of any allegations that Defendants have threatened or taken any action to enforce the statute against them. The Amended Complaint is further devoid of any allegations connecting either Defendant to any of Plaintiffs' alleged activities concerning undercover investigations in animal facilities, pharmaceutical companies, academia, industrial facilities, and agricultural facilities, or alleged reliance on whistleblowers in such facilities. (*See also* Argument IV discussing the absence of such allegations in the context of Plaintiffs' lack of standing).

14

Consequently, because Plaintiffs fail to allege any ongoing conduct by Defendants Cooper and Folt in violation of federal law, Defendants Cooper and Folt do not qualify as "persons" for the purposes of a § 1983 action. This failure necessitates the dismissal of Defendants with respect to Plaintiffs' § 1983 claims (Counts I and II) pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

## III. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS.

Defendants are entitled to Eleventh Amendment Immunity with respect to Plaintiffs' State constitutional law claims arising under the N.C. Constitution, Article I, §§ 12, 14, and 19 (Counts III, IV, and V). "The Eleventh Amendment bars the adjudication of state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541 (2002).

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst,* 465 U.S. at 106. *See also Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997) (claim seeking injunctive relief for state official's violation of state law is barred by Eleventh Amendment); *Szabo v. E. Carolina Univ.*, No. 4:07-CV-10-BO, 2007 U.S. Dist. LEXIS 56468 at* 5 (E.D.N.C. Aug. 1, 2007) ( "[t]he Eleventh Amendment protects states by prohibiting federal courts from considering state law claims against

state officials."); *Hooper v. North Carolina,* 379 F. Supp. 2d 804, 813 (M.D.N.C. 2005) (granting state university's motion to dismiss state law claims against State and individual defendants in their official capacities based on Eleventh Amendment immunity).

While a State may waive the protection of the Eleventh Amendment by an unequivocal State statute or a State constitutional provision, *Edelman v. Jordan*, 415 U.S. 651, 673 (1974), Plaintiffs cannot cite any authority to establish that the State of North Carolina has waived its Eleventh Amendment immunity as to direct claims brought pursuant to the North Carolina Constitution in federal court. As a result, Defendants retain their Eleventh Amendment immunity from Plaintiffs' State Constitutional Claims. Accordingly, Plaintiffs' State Constitutional Claims in Counts III, VI and V must be dismissed.

## IV.    PLAINTIFFS LACK STANDING TO PURSUE THEIR 42 U.S.C. § 1983 CLAIMS AGAINST DEFENDANTS.

Under Article III, section 2 of the Constitution, this court's subject matter jurisdiction is limited to deciding "cases" or "controversies." *See e.,g*., *Allen v. Wright*, 468 U.S. 737, 750 (1984). A case and controversy does not exist and the court lacks subject matter jurisdiction if a plaintiff lacks standing. To establish a case and controversy, each plaintiff must demonstrate that 1) he has suffered an injury-in-fact, not one that is hypothetical or conjectural; 2) the injury is fairly traceable to action of the defendant, thus satisfying a causation element; and 3) the injury may be redressed by a

favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81 (2000).

Plaintiffs PETA, ALDF, and Farm Sanctuary allege harm because they cannot send their own undercover investigators into animal facilities without fear of civil liability under N.C.G.S. § 99A-2. (Am. Compl. ¶¶ 22, 30-31, 35-36) Plaintiffs CFS, FWW, Farm Sanctuary, GAP, FF, and ASPCA all fear potential civil liability under N.C.G.S. § 99A-2 if they rely on and/or publish information from whistleblowers. (Am. Compl. ¶¶ 26, 36, 39, 42, 45, 51).

Plaintiffs' fears are hypothetical and conjectural and do not rise to an injury-in-fact. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013) (holding that "an injury to organizational purpose, without more, does not provide a basis for standing"); *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976)("Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III"). Plaintiffs fail to allege how Defendant Cooper or Defendant Folt are likely to enforce the challenged statute against them in the future and thus cause them an injury. Defendant Cooper is not alleged to operate or own an animal facility, agricultural industrial facility, pharmaceutical company, academic facility, or any other facility identified by Plaintiffs. There are no allegations that Defendant Cooper is likely to enforce this civil statute against any Plaintiff in the future, much less based upon the activities in which Plaintiffs

17

engage. Moreover, as a matter of law, Defendant Cooper lacks a sufficient enforcement connection with the statute. (See Part IA above.)

Likewise, Defendant Folt is not alleged to own or operate a farm, an agricultural industrial facility, or a pharmaceutical company. None of the Plaintiffs have alleged a credible threat from Defendant Folt in relation to Plaintiffs' activities. Only Plaintiff PETA alleges that it would like to investigate UNC-Chapel Hill's research facilities, and only Plaintiff GAP alleges that it previously assisted and advocated for a UNC-Chapel Hill employee, on a matter unrelated to N.C.G.S. § 99A-2. Neither of these Plaintiffs allege that Defendant Folt is likely to enforce N.C.G.S. § 99A-2 against them in the future – and, as explained in Part IB above, she is not authorized by statute to do so. None of the other Plaintiffs make any allegation of any kind against Defendant Folt or UNC-Chapel Hill.

Even if Plaintiffs' fears were based on a credible threat of civil action from Defendants, such that they are suffering an injury-in-fact, they do not satisfy the causation element of standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (standing requires a concrete injury in both a qualitative and temporal sense; it must be actual or imminent, not conjectural or hypothetical). Constitutional standing requires a plaintiff's injury to be fairly traceable to conduct of the defendant, and not the result of the independent action of some third party. *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007). A plaintiff bringing a pre-enforcement challenge to the constitutionality of a statute must show that the defendant has authority to enforce the statute. *Id.* at 1109.

18

Plaintiffs have not alleged any nexus between Defendants Cooper and Folt and the enforcement of this civil statute. *See id.* at 1109 (holding plaintiff failed to establish meaningful nexus between defendant's actions and the statute, such that plaintiff's harm (fear of prosecution) could be fairly traced to defendant's actions).

Finally, Plaintiffs cannot meet the redressability requirement of standing. Plaintiffs seek to enjoin Defendants, as well as their officers, agents, employees, attorneys, and all other persons in active concert or participation with them from enforcing the statute. N.C.G.S. § 99A-2 does not give Defendant Cooper or Defendant Folt separate authorization to bring suit against Plaintiffs. Plaintiffs' injuries are fairly traceable only to those civil litigants who are owners, operators, or employers of premises within the meaning of N.C.G.S. § 99A-2 and who seek damages under the statute. There are no allegations in the Amended Complaint that Defendants Cooper and Folt are such owners, operators, or employers within the meaning of the statute in relation to a Plaintiff. The injunction Plaintiffs seek is insufficient to prevent any future risk of suit against Plaintiffs by private individuals. Thus, the request for an injunction cannot adequately redress Plaintiffs' alleged injury.

Enjoining the Defendants does not address Plaintiffs' alleged injuries. An injunction against the Attorney General or Chancellor Folt would not enjoin any private litigant, such as an employer whose privacy or property interests are potentially harmed by the non-negligent tortious conduct of an employee. It also would not obligate private litigants to refrain from proceeding under the statute.

A declaration that the statute is unconstitutional would place this court in the role of issuing advisory opinions, something it may not do.  *Fowler v. Alexander*, 478 F.2d 694, 696-697 (4th Cir. 1973); s*ee also Digital Recognition Network, Inc., v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (rejecting issuing advisory opinions).  There is no alleged relationship between potential private litigants and the Defendant state officials to suggest that the private litigants would consider themselves bound to follow an order directed at the Defendant State officials.  803 F.3d at 959.

Plaintiffs lack standing to sue Defendants Cooper and Folt and this Court should dismiss all counts in the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## V.     PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT N.C.G.S. § 99A-2 IS UNCONSTITUTIONAL.

Plaintiffs attempt to facially challenge N.C.G.S. § 99A-2 and request that this Court declare the statute unconstitutional under the First and Fourteenth Amendments of the United States Constitution and under Article I, §§ 12, 14, and 19 of the North Carolina Constitution.  (Am. Compl. ¶ 142)

"'[F]acial challenges to legislation are generally disfavored[.]'  Because '[c]laims of facial invalidity often rest on speculation[,] . . . they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'"  *United States v. Chappell,* 691 F.3d 388, 392 (4th Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)), *cert. denied*, 133 S. Ct. 965 (2013).  "To succeed in a typical facial attack, [a party] would have to establish 'that no set of

20

circumstances exists under which [a statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *Chappell*, 691 F.3d at 394 (*quoting United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)). *See Beaufort County Bd. of Educ. v. Beaufort County Bd. of Comm'rs,* 363 N.C. 500, 502, 681 S.E.2d 278, 280 (2009) (in a facial challenge, party must show that there are no circumstances under which statute might be constitutional).

Contrary to Plaintiffs' conclusory allegations, N.C.G.S. § 99A-2 is not facially invalid due to the myriad of circumstances under which the statute may be applied to protect legitimate rights of employers, property owners, or operators of premises completely unrelated to "free speech" concerns. For example, N.C.G.S. § 99A-2 may apply where an employee intercepts an employer's documents or communications and turns them over to his employer's business rival or reveals trade secrets. The statute may also apply where the employee uses the employer's information for his own personal gain or destroys the employer's property in retaliation or for any other reason. The intercepted data or stolen information in these situations *are not* a matter of public concern and therefore not covered by the First Amendment. *See and cf., Bartnicki v. Vopper,* 532 U.S. 514, 533-34 (2001) (First Amendment protects law-abiding publisher's disclosure of truthful information on a matter of public concern even though the information was illegally intercepted by other persons in violation of a federal criminal statute). Given the legitimate applications of N.C.G.S. § 99A-2, Plaintiffs' facial challenge fails as a matter of law.

Additionally, this case is too speculative for adjudication of whether N.C.G.S. § 99A-2 is unconstitutional. "[A] Court in the absence of a concrete fact situation in which competing associational and governmental interests can be weighed, is simply not in a position to determine" whether the law is unconstitutional. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 56 (1974). This case would be better adjudicated with a specific factual circumstance in order to provide an as-applied analysis.

Plaintiffs also allege, without sufficient supporting facts, that N.C.G.S. § 99A-2 is "overbroad." (Am. Compl. ¶¶ 4, 80, 91, 118, 131). The First Amendment "overbreadth" doctrine is employed only as "a last resort." *Chappell*, 691 F.3d at 395. Overbreadth challenges will not be entertained where there is no realistic danger that a statute's existence would cause third parties to refrain from constitutionally protected speech. *Id.* "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished," the Supreme Court "[has] recognized that the overbreadth doctrine is 'strong medicine' and [has] employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982). Accordingly, "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications . . . ." *Id.* at 771.

N.C.G.S. § 99A-2 does not regulate the content of any speech or single out any particular entity that may be liable under the statute. The statute also does not restrict the manner in which individuals can report alleged violations of law. Instead, N.C.G.S. § 99A-2 simply creates a new civil cause of action, in part, for a "breach of duty of loyalty"

22

arising from trespassory interference with privacy and property rights in the nonpublic areas of a premises. This cause of action against an employee may arise when the employee does not have a *bona fide* purpose towards its employer because the employee's intent is to deceive. *See Black's Law Dictionary* (5th Edition) (defining "bona fide" as made "in or with good faith; honestly, openly, and sincerely; without deceit or fraud"). A *bona fide* whistleblower-employee would not be in violation of the statute because his status as *bona fide* would exclude him from the statutory definition of "exceeding the authority to enter a nonpublic area" within the meaning of N.C.G.S. §§ 99A-2(b)(1) and (2).

Plaintiffs' claims that N.C.G.S. § 99A-2 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment and Article I, § 19 of the North Carolina Constitution are equally without merit. Contrary to Plaintiffs' allegations, in the context of equal protection challenges, strict scrutiny is reserved for content-based speech restrictions and does not apply to content-neutral statutes. *Taxi Cabvertising, Inc. v. City of Myrtle Beach,* 26 Fed. Appx. 206, 208 (4th Cir. 2002) (unpublished opinion attached). N.C.G.S. § 99A-2 is content-neutral and therefore strict scrutiny does not apply. The statute codifies a civil cause of action for non-negligent tortious conduct that is done either with a deceitful purpose (N.C.G.S. §§ 99A-2(b)(1) and (2)); knowingly or intentionally (N.C.G.S. § 99A-2(b)(3)); conspiratorially (N.C.G.S. § 99A-2(b)(4)); or with substantial interference (N.C.G.S. § 99A-2(b)(4)); and that relates to the privacy, personal or real property interests of an owner or operator in the nonpublic area of its

23

premises. None of these protections has anything to do with the content of the speech at issue. Protecting such interests is a legitimate state interest and, accordingly, the statute is valid under the Equal Protection Clause. *See Taxi Cabvertising, Inc.,* 26 Fed. Appx. at 208 (citing and quoting *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440, (1985) (statute is valid under Equal Protection Clause if "the classification drawn by the [ordinance] is rationally related to a legitimate state interest.")

While Plaintiffs reference Due Process in their Amended Complaint, they fail to allege any facts to support a due process claim under either the federal or State constitutions or to establish how due process would be violated simply by an employer filing a civil cause of action pursuant to N.C.G.S. § 99A-2 for actions taken by an individual/employee who acts in the nonpublic areas of the employer's premises for a reason other than the individual/employee's legitimate employment with the employer. Any cause of action brought pursuant to this statute would be litigated in accordance with the applicable Rules of Civil Procedure.

As an additional matter, Plaintiffs allege that various legislators made comments regarding the rationale for the legislation, including that it was to deter tortious conduct and to allow individuals to make reports to law enforcement and other appropriate authorities. (Am. Compl. ¶¶ 72-77) Regardless of the debate, such allegations as to the comments of legislators' are immaterial. *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 657, 403 S.E.2d 291, 295 (1991). Legislative intent must be drawn from the construction of the statute, and cannot be shown by the testimony of a legislator. *Styers*

*v. Phillips*, 277 N.C. 460, 472, 178 S.E.2d 583, 590 (1971). *See also South Carolina Education Asso. v. Campbell*, 883 F.2d 1251, 1257 (4th Cir. 1989)(holding that "judicial inquiries into legislative motivation are to be avoided.") As a result, the intent of the North Carolina General Assembly is the plain language of N.C.G.S. § 99A-2 itself, and Plaintiffs' allegations concerning comments by legislators do not support a claim for relief.

Contrary to Plaintiffs' allegations, N.C.G.S. § 99A-2 does not prohibit a *bona fide* employee from disclosing information to the appropriate authorities, the media, or any other organization. Likewise, the statute does not prevent the media from using any information gathered by *any* individual—whether *bona fide* or not.

For all of these reasons, Plaintiffs' challenge to the constitutionality of N.C.G.S. § 99A-2 fails. Plaintiffs' Amended Complaint is a compilation of legal conclusions and arguments, none of which suffice to overcome a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiff must plead factual content). The present Amended Complaint should be dismissed.

## VI. PLAINTIFFS CFS, FWW, GAP, FF, AND ASPCA FAIL TO STATE A CLAIM FOR RELIEF FOR "FEAR OF LIABILITY" UNDER N.C.G.S. § 99A-2.

Not only does Plaintiffs' Amended Complaint fail as a matter of law generally, but it fails completely as to the subgroup of Plaintiffs, CFS, FWW, GAP, FF, and ASPCA. Each make broad conclusory allegations as to their fear of liability under N.C.G.S. § 99A-2 based on their potential reliance on whistleblowers. (Am. Compl. ¶¶ 25-26, 39,

40-42, 45, 51) Their unfounded statements are insufficient to state a claim for relief under *Iqbal* and *Twombly*. Further, Plaintiffs have misread N.C.G.S. § 99A-2(c), which does not make reliance on whistleblowers actionable. *Bona fide* "whistleblowers" are not covered in N.C.G.S. §§ 99A-2(b)(1) and (2).[3] The statute does not give an employer a cause of action against a *bona fide* whistleblower or against a third-party who comes into possession of information (whether this information is of public concern or not) from a *bona fide* whistleblower. Moreover, the statute does not create a cause of action by an employer against a third-party who comes into possession of information from a *non-bona fide* whistleblower. The cause of action by the employer is against the *non-bona fide* person engaging in the conduct exceeding the scope of his authority *while on the employer's premises*. N.C.G.S. §§ 99A-2(b)(3), (4), and (5) cover a person's non-negligent tortious acts of interference with privacy interests, personal property, and real property, respectively, while on the employer's premises; these provisions do not cover "whistleblowers."

The only possible liability of a third-party to the employer is if that party is a "person who intentionally directs, assists, compensates, or induces another person to violate this section shall be jointly liable." N.C.G.S. § 99A-2(c). Although Plaintiffs CFS, FWW, GAP, FF, and ASPCA allege reliance upon, and receipt of information gathered by persons who are whistleblowers, none has alleged any facts at all that indicate a plan to "intentionally direct, assist, compensate, or induce another person to

---

[3] Consequently, N.C.G.S. § 99A-2 is not "overbroad," as alleged by Plaintiffs (Am. Compl. ¶¶ 4, 80, 91, 118, 131). *See* Argument V.

violate" the statute. Even if Plaintiffs' Amended Complaint could be reasonably interpreted to make such an allegation, Plaintiffs' claims still fail because the First Amendment does not protect such unlawful conduct, as argued below. (*See* Argument VII). Thus, Plaintiffs' own allegations defeat their claims. Plaintiffs' alleged future desire to rely on whistleblowers is not an activity within the purview of N.C.G.S. § 99A-2. Plaintiffs CFS, FWW, GAP, FF, and ASPCA each fail to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for Counts I, II, III, IV and V and these claims must be dismissed.

## VII.  PLAINTIFFS ALDF, FARM SANCTUARY, AND PETA FAIL TO STATE A CLAIM FOR RELIEF.

The Amended Complaint also fails as to the subgroup of Plaintiffs ALDF, Farm Sanctuary, and PETA. Each employs individuals to investigate undercover at facilities, gain access to the nonpublic areas of their employers' premises, and work to get information and/or recordings to provide to Plaintiffs ALDF, Farm Sanctuary, and PETA. (Am. Compl. ¶¶ 18-20, 27-28, 36)  Based on these allegations, Plaintiffs ALDF, Farm Sanctuary and PETA apparently desire to "intentionally direct[], assist[], compensate[], or induce[] another person to violate" N.C.G.S. §§ 99A-2(b)(1), (2) or (3). This desired conduct arguably would be actionable under N.C.G.S. § 99A-2(c). However, none of these Plaintiffs aver any concrete plans to actually engage in this conduct and, therefore, do not state an actual claim for relief. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 )(1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a

finding of the 'actual or imminent' injury that our cases require.") These Plaintiffs argue in broad, unspecified terms, in their Amended Complaint that such actions are worthy of constitutional protection. (Am. Compl. ¶¶ 81-113)

Moreover, our Fourth Circuit has foreclosed such a claim as a matter of law. In *Food Lion, Inc. v. Capital Cities/ABC, Inc*., the Fourth Circuit held that undercover investigations were actionable under common law claims for trespass and breach of duty of loyalty. 194 F.3d 505, 515-519 (1999). Specifically, in *Food Lion*, two ABC television reporters used false resumes to obtain employment at Food Lion. *Id* at 510. While working at Food Lion, the reporters secretly videotaped food handling practices and provided the video footage to ABC. *Id.* The Fourth Circuit analyzed the claims of breach of duty of loyalty and trespass, as it applied in the case, and concluded that the reporters – by filming in non-public areas at Food Lion stores while employed by Food Lion and providing the video to ABC – had committed the torts of trespass and breach of duty of loyalty. *Id*. at 515-519.[4] The Fourth Circuit held that the First Amendment did not provide a defense to the unlawful actions of the reporters. *Id.* at 520-522. To the contrary, the Fourth Circuit stated that "[w]e are convinced that the media can do its important job effectively without resort to the commission of run-of-the-mill torts." *Id.* at

---

[4] In *Dalton v. Camp*, 353 N.C. 647, 655, 548 S.E.2d 704, 709 (2001), the North Carolina Supreme Court disagreed with the Fourth Circuit's conclusion in *Food Lion v. ABC* that North Carolina State Courts had or would recognize a claim for breach of duty of loyalty. The North Carolina General Assembly, however, has statutorily created the claim for breach of duty of loyalty in N.C.G.S. § 99A-2 under the circumstances set forth in the statute.

521. The press "'has no special immunity from the application of general laws.'" *Id.* (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991)) (citations omitted).

The conclusory legal allegations by Plaintiffs ALDF, Farm Sanctuary, and PETA are nothing more than a request to receive an advisory opinion allowing them to commit run-of-the-mill torts in advance of any actual, much less threat of a, lawsuit from any potential employer. In this regard, there is no case and controversy before this Court. *See Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) ("'To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review . . . .'") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)), *cert. denied*, 550 U.S. 934 (2007). N.C.G.S. § 99A-2 protects the privacy and property interests of employers against non-negligent tortious conduct. Plaintiffs ALDF, Farm Sanctuary, and PETA are effectively seeking a declaration that the First Amendment of the United States Constitution[5] shield their proposed tortious interference with an owner or operator's premises. Based on the Fourth Circuit's holding in *Food Lion*, Plaintiffs' proposed behavior is not protected constitutionally *per se,* and the First Amendment does not shield such unlawful actions.

Likewise, these Plaintiffs maintain that their Fourteenth Amendment[6] rights are violated because N.C.G.S. § 99A-2 targets their speech and is vague. (Am. Compl. ¶¶ 124-125) Given that Plaintiffs' proposed tortious actions are not shielded from liability

---

[5] Sections 12 and 14 of the North Carolina Constitution provide similar rights as those provided by the First Amendment of the U.S. Constitution.

[6] Section 19 of the North Carolina Constitution provides similar rights as those provided by the Fourteenth Amendment of the U.S. Constitution

by the First Amendment, these Plaintiffs also fail to state a claim for relief under the Fourteenth Amendment. Defendants' research has not uncovered any Fourth Circuit case holding that "trespassers" or persons who commit non-negligent tort actions are a protected class of any kind within the meaning of the Fourteenth Amendment. As a result, Plaintiffs ALDF, Farm Sanctuary, and PETA, who desire to commit non-negligent tortious actions that the North Carolina General Assembly has deemed potentially actionable in limited circumstances impacting the privacy and property rights of an employer, fail to allege facts sufficient to state claims for relief pursuant to the United States or North Carolina constitutions. As a result, Counts I, II, III, IV and V should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

For all of the reasons detailed above, Defendants respectfully request that the Court grant their Motion to Dismiss.

Respectfully submitted, this the 4th day of April 2016.

ROY COOPER
Attorney General

/s/ Lauren Clemmons
Special Deputy Attorney General
N.C. Bar No. 15987
lclemmons@ncdoj.gov

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
N.C. Bar No. 24314
N.C. Department of Justice
P.O. Box 629
Raleigh, N.C. 27602-0629
Tele:   (919) 716-6920
Fax:    (919) 716-6764
kpotter@ncdoj.gov

## CERTIFICATE OF SERVICE

       I hereby certify that on this 4th day of April 2016, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW TO SUPPORT MOTION TO DISMISS W**ith the Clerk of Court using the CM/ECF system, which will send notification of such filing to Plaintiffs' attorneys as registered CM/ECF users:

| | | |
|---|---|---|
| Matthew D. Strugar | Daniel Kent Bryson | Leslie A. Brueckner |
| Cristina R. Stella | Jeremy R. Williams | David S. Muraskin |
| Scott Edwards | Sarah L. Nash | |

       I hereby certified that I served on those counsel for Plaintiffs not registered in the CM/ECF system by depositing the same in the United States mail, postage prepaid, and addressed as follows:

Matthew Liebman
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931

Justin Marceau
Univ.of Denver,
Strum College of Law
2255 E. Evans Ave.
Denver, CO 80208

Robert Hensley
Jennifer H.Chin
520 Eighth Avenue, 7th Floor
New York, NY 10018

Michael S. McFadden
Farm Forward
325 W Pierpont Ave.
Salt Lake City, UT 84101

       This the 4th day of April, 2016.

       /s/ Kimberly D. Potter
       Kimberly D. Potter
       Special Deputy Attorney General